Good afternoon, may I proceed? Yes, you may. We'll call the first case. We're going to put it on record. This is Bank of Hope v. Chon. Mr. Harvey? Yes, Your Honor. Please proceed. Good afternoon, and may it please the Court. My name is Stephen Harvey. I am the attorney for the appellant, James Rue, in this matter. I'd like to reserve five minutes for rebuttal. I'm going to make just a few relatively simple points, because I think the briefs have outlined the issues, I hope. And the first point is that the factual record has developed a bit since the briefing was submitted. Yeah, it has. So maybe you could enlighten us here. Why did the parties think it unnecessary, in light of changes like Bank of Hope dropping its suit, to not go back to the magistrate judge and say, hey, it's time to revisit this order? Because we're getting ready for the trial of a counterclaim in that underlying case. So the underlying case is going on, and we... True enough. We understood that. But is it not very possible that a magistrate judge looking at a substantially altered legal landscape that is no claim at all coming from Bank of Hope, and the $54,000 counterclaim being all that's remaining between these parties, might think things are different now, I would weigh things differently now? I wouldn't think so. And I asked the other side whether they'd be willing to agree to lift the order, and they said that they weren't agreed. So I don't think, without the other side agreeing with me, that the order should be lifted. I have no confidence that it would be lifted. And the reason why, Your Honor... Well, hold on. This is our chance to ask you questions, all right? Please. That doesn't seem to be responsive to the question I'm putting to you, which is why is it that you wouldn't ask? You say you have no confidence there would be a difference. Is there something that prompts you to say, if you went back to the court and said, the case is very different now, there's no claim coming from Bank of Hope at all, this is the only claim, we think something should change. And you made your pitch to the magistrate judge that you've made to us. Why do you think that would have no traction at all? Because there is still so much going on between these parties, with litigation in the Southern District, litigation in the Second Circuit, with this case and with a counterclaim going on. I don't have any confidence that the judge would say that he was going to lift this in order to prevent my client from speaking out about the harm that he has suffered as a result of what happened in this underlying lawsuit. It's nothing about the way the judge or anybody else addressed the parties. You're not indicating that there's some bias or some problem like that, right? No, I'm not suggesting that at all. I'm suggesting that magistrate judge, there's been a change. We don't have the same district judge. Judge Linares has stepped down, retired from the bench. And we just, I apologize, I don't have the name of the new district judge at the top of my head, but we're still in front of magistrate judge Dixon for the supervision of that case. And it's McNulty, excuse me, Judge McNulty. And so given our past history with him, I don't expect there to be any, especially if Bank of Hope was not unwilling to agree that the order should be lifted, that he would agree to lift the order. We argued this to him and to the district court. This is not a legal question, this is a practical one. Is it Mr. Ryu's position that he still needs to and wants to send letters of the very same character that he was sending before out to the shareholders of Bank of Hope now as he was sending when Bank of Hope had a claim against him? Yes, absolutely. He very much wants to exercise his free speech rights with respect to the shareholders of the bank. He wants to say the same things. The same kinds of things. Grievous injustice, he's been harmed, his life has been ruined. I think it's not so much grievous harms, life's been ruined, et cetera. I take the problems that they have with your clients' letters to be things like, and we could quote them here at length, things like, you know, the market's going to lose confidence in your stewardship because of the way you've handled this lawsuit against me and not very veiled threats concerning stock price. Yes, he did express that concern explicitly. He is concerned for the management of this organization, that it would take these actions against him, and there's no question about that. He thinks there's been pretty serious mismanagement of this problem on the part of the bank, and he thinks that could affect the bank. I'm correct that this is only communication with shareholders. He has not attempted to, and I think disavows, any contact with the directors, the officers, the people directly managing the litigation, correct? That's correct. He did correct them. He did contact them, and then he was ordered not to, and he hasn't done so. That is not before us. And that issue is not before you, nor is the confidentiality of the document that he disclosed, which he realized was a mistake, and he didn't do again. That is not before you. It is simply his right to say that he's being treated unfairly, which is before you. And it's a pretty serious right, a right to say that you've been subjected to mistreatment wherever you are. In fact, it's hard to imagine any circumstance in America where you could be mistreated or be treated unfairly and be unable to speak out about it. And there is no speaking out. It's not that you're not able to speak out about it, counsel. It's that there has to be restrictions on the parties to quorum in the litigation, right? I'm assuming you don't object to the concept that litigants enjoy different rights of speech or different rights of expression when they're acting within the confines of the supervision of the district court. Precisely, and that's why we're not contesting the issue with respect to communicating with the directors and officers, but the shareholders are third parties. And it just seems that as a matter of fundamental fairness, that if the bank can accuse him of embezzlement in a lawsuit that obviously would have the effect of destroying his reputation and his life, that he should be able to speak out, not to litigants, but to third parties about his complaints against the bank. Well, when you say third parties, I mean, these are not unrelated third parties, right? I mean, the argument coming from the other side, of course, is this was a calculated effort to gain a commercial leverage, financial leverage over the bank in the lawsuit. It was an effort to go to institutional investors, not by chance or happenstance, but so that they would pressure the bank to do something different. And if they didn't do that, that he would do things to drive the stock price down. Their economic interests were going to be harmed. That was the tenor of his statement to the bank officers. And one could fairly read this language, the loss of confidence by HOPE shareholders on Bank of HOPE due to this litigation and the bank's malpractice will have significant consequences when the market trusts on HOPE management waivers. The market value of this regional institution will decline. As a major shareholder, your prompt attention and action may be warranted. That language looks like a direct appeal to these people who have a financial interest by saying to them, I'm going to hurt your interest and you better make things happen at the bank because you can do it. So it's not like speaking to a newspaper. This is speaking to closely related people and entities, isn't it? No, they're not really closely related at all. They're institutional shareholders. They're not close at all. They're really as far apart as you could be. And certainly he wants to speak to them. That's a valuable audience for him. That is the most valuable audience for his speech. Because? Because he has been treated unfairly and he knows that the shareholder There's financial pressure to bear, right? Well, that could be how it works. Yes, Your Honor, correct. I'm not disputing that. I'm just saying that his interest is not purely economic. He has an interest in his personal dignity. He has an interest in his reputation. He talks about the effect on his family. And the fact that it's an economic motive is because of the nature of the injury here, which is economic, largely. Let's look at the legal piece here. So you are forthright in acknowledging that there's a financial interest here. There's an economic motive. So to that extent, would you agree that this is commercial speech? No, Your Honor. I would not. I mean, if anything, it's mixed commercial speech. Okay. It could be mixed commercial speech. All right. I do think that's actually under the case law. A little bit of a stretch because there's no goods or services. So I say, if anything, it could be. I'm going there for the sake of argument. But it doesn't look at all like the commercial speech that this court has recognized or that the Supreme Court has recognized in the past. Right. You've reserved five minutes, so we don't have a bunch of time to get into Kleiner. But there is a case law out there that indicates that in the context of litigation, this kind of thing could be viewed as commercial speech, isn't there? There's one case. There's the Kleiner case, and that's it. And there's nothing else other than that. And it doesn't seem to meet the Supreme Court's test nor the test this court has articulated. And when you look at it with what you said about in the diet drugs case, where there's mixed commercial speech and non-commercial speech, you have to apply the more protective law. That's where I was going. If we viewed it as mixed, why is that good for you? How do you win? Because the court has no legitimate interest in regulating his speech to third parties. The court isn't in a position. Courts don't enjoin defamation. Courts don't enjoin or get involved in speech to people outside the litigation. It may be right. It may be wrong. It's really not the business of the court to be policing communications any more than we should go to the court and ask for permission to make a press release if we want to. It's outside the bounds of what – and that's why it's a prior restraint. And that's – I mean, this is the doctrine of prior restraint, and I see that my time is up. You don't have to sit down because we haven't even touched the jurisdictional issue. We've got some questions about that. I'd be happy to answer your questions. But I've stolen the microphone long enough. I'll cede to my co-counsel here for a moment. If they don't have any questions for you, I do. Let's talk here about jurisdiction for a moment. You've read your opponent's briefing saying there's no jurisdiction at all here, and you've marked out 1292A1 as one potential source of jurisdiction. How could that be? I mean, how can that be? Is that your best argument? No, actually, I think our argument on this is excellent, to say the least. It's very strong, and I wasn't anticipating any questions, but I'm happy to answer them. The Sixth Circuit in the Ford case that we cited involving a prior restraint or an order limiting what a litigant could say found that all three of our arguments were accepted in that case, that it was both collateral order, it was in the nature of an injunction, and that it was in the nature of a mandamus. And they cited, that court cited the Schiavo case, which is the decision of this court, 1974 under the collateral order doctrine, and it seems like it fits. They go to collateral order. That case, Schiavo was decided on the collateral order doctrine, right? I'm trying to figure, you put three in front of us, it's a smorgasbord. Which do you think is your best? Well, I think Bailey is the best case for us because it's so close to end point. Judge Leon Higginbotham, in that case's decision, recognized that this was in the nature of injunctive relief that was at issue, and so I think that that one is most, and then the Third Circuit in the Bailey case also suggested that it didn't need to reach mandamus, but that mandamus might be available as a remedy as well because of the nature of this. If this is, we're right, this is a prior restraint, not commercial speech. Then where there's a wrong, there's got to be a remedy. What if you're wrong and it's not a prior restraint? What if we didn't see your constitutional claim? Do you have any other way to win? Absolutely. If the court doesn't agree that it's a prior restraint, then our case is premised on the First Amendment. This is a First Amendment claim, and I wouldn't think we have any other way to win if you don't agree that this violates the First Amendment. That's the issue in the case. Well, what if we said it's commercial speech, and under commercial speech doctrine, prior restraint rules don't ordinarily apply. You can have a prior restraint. You're still under the First Amendment. You're just under a lower standard of review by us, so to speak. How would you press forward then? This is addressed directly in the briefs, and even if this is not, if it's mixed commercial speech, it needs the protection that's afforded to non-commercial speech. If it's all commercial speech, then it still only can be regulated for, subject to reasonable regulation for, you know, if it was misleading or was untruthful. But there's no tradition for courts to regulate speech with non-parties. That's the point I was just making. So even if it is commercial speech, there's still no basis for the district court to ban it altogether or to regulate it because this is simply not a function that courts should or can exercise. In other words, if it was commercial speech and we're talking about advertising for, you know, take a pharmaceutical product, then we can look at traditionally what's the state's interest or the government's interest in regulating pharmaceutical products and what are the dangers we have to prevent and what kind of advertising we want to have. But there's just simply no tradition of courts exercising in that kind of weighing and consideration with respect to the speech of litigants to non-litigants. And for that reason, it seems like a fairly straightforward case of. I think Judge Jordan's point, though, is that it's not straightforward that they're non-litigants because they are not the people directly calling the shots, but they are the sheer owners of one side and subject to I suppose you could even characterize it as a form of blackmail. So it's a little different from speaking to someone completely unrelated. If the marshal of this court, the bailiff of this court, throws me in prison for doing something intemperate in front of the court, I would certainly want to direct my communications to maybe the public, maybe this court, because there are the people who can get the bailiff to let me out of the jail. In this case, the person who's bringing these actions against my client is Bank of Hope. These are not closely held. This is BlackRock and Fidelity and Raymond James. These are not closely held. So I think I have a hard time understanding how they could be so close that, in fact, these people are incredibly hard to persuade. It seems quite unlikely that my client would be able to persuade them. And if he did, he would have a heck of an argument, and he would have won in the marketplace of ideas. And that's exactly why this presents a First Amendment question. You made the free exchange of ideas argument in your reply brief, but this doesn't really feel like the marketplace of ideas. This feels like the marketplace of the market. You're trying to get the market price down, and that's their complaint. But we've got your argument, I think, and let's certainly go on. Okay, thank you very much, Mr. Harvey. We'll have you back on rebuttal. Mr. Yee? Good afternoon, and may it please the Court, my name is Michael Yee. I'm counsel of record to the appellee, Bank of Hope. I prepared a statement. I'm happy to go into it. Otherwise, if the Court wishes for me to answer questions, I'll do that. I'm sure we've got questions. And the first one I've got for you is, what's the standard of review? Because in your brief, you didn't answer that question. You just said there's no jurisdiction. But assume we thought you were wrong and we do have jurisdiction, what's the bank's position on how we should be reviewing the district court and the magistrate judge's order? Your Honor, on this substantive issue before this Court, is whether the magistrate judge's order, the November 2017 order, was an abuse of his discretion or clearly erroneous or contrary to law. Yeah. Well, that puts you at odds with your colleague there who says that this is a First Amendment case. And as a First Amendment case, we have a special obligation to give a plenary review and, in fact, to give the record a searching examination on the facts. In other words, it's almost like plenary plus. He cites case law to that effect from this circuit. Why is he wrong? Well, I would submit, Your Honor, that this Court on this appeal, if the jurisdiction issue were set aside, would be sitting in the position of the district court, Judge Linares, and reviewing the magistrate judge's order, specifically his fact findings with respect to exactly what this appellant did, the misconduct that he engaged in. And if the Court finds that the findings and the application of law were proper and that it was not clearly erroneous or contrary to law, then I believe the order should be affirmed. Okay, why an abuse of discretion review to an issue? I mean, the factual findings are another matter, but the remainder of it, how can we apply abuse of discretion review to what your friend on the other side says is a classic issue of is this commercial speech or not? How do we apply intermediate scrutiny or strict scrutiny? I don't understand why we're not reviewing at least all of that de novo. Well, I believe that this Court, assuming that this Court has jurisdiction, can review the factual findings and the legal determination on a de novo basis. Well, okay. Would you answer, please, the question that I was putting to your colleague there at the very start, which is what is the reluctance on the party's behalf to go back to the magistrate judge and say, Bank of Hope has dropped its claims, this is a different case than it was when you entered the order, please take a look at this afresh. Is the bank also, like Mr. Harvey and his client are, reluctant to approach the Court with the changed circumstances of this case? Not at all, Your Honor. We have no such reluctance. In fact, we have not prevented Mr. Harvey or the appellant from going back. Why haven't you gone back, I think, is Judge Jordan's question. What is your opposition to going back to the district court and seeking a modification of the order? We have no opposition to going back before the magistrate judge. What we intend to do is if they were to make an application to lift the order, we would oppose that application. That's what we indicated to Mr. Harvey. And if I may, Your Honor, Mr. Harvey, in his submission to this Court, attached his e-mail communication with me, in which he specifically indicated that if the order were lifted, that the appellant intends to continue the same communication to the institutional shareholders. And at this juncture, the institutional shareholders and your clients, board of directors and officers of the entity, have a case that involves not claims in excess of a million dollars by you, but a claim by him for $54,000. Would you agree that that's not a substantially different case than it was when this order was put in place? Well, I certainly think there's been a factual development in this case, Your Honor. I don't know that the sole remaining counterclaim of this appellant against the bank can be described as a $54,000 claim. Well, how would you describe it? He said he had $54,000 in the bank, and you took it and wouldn't give it back to him because you said it was some kind of an offset against the money he owed you. And now you say he doesn't owe you anything, and he still wants his money back. That's what it looks like to a person like me standing off to the side. It looks like a $54,000 claim. How do you describe it? Your Honor, I think that would be a question for Mr. Harvey to answer. All I know is that they have a counterclaim against the bank. It's based on the fact that the bank placed an administrative hold on the $50,000 in his bank account during the pendency of the bank's internal investigation. What damages the appellant may be seeking for his counterclaim, we cannot say. I'm aware of the type of damages they're seeking and the approximate amount, but I can tell you that it's well in excess of $54,000. So you made some reference to the need to defer to factual findings, but when I read the magistrate judge's report and recommendation in the district court, I didn't see real factual findings supporting the need for this order. What on-the-record factual findings justify this prior restraint? Well, I think the core of the magistrate judge's fact-finding has to do with the letters themselves. You're talking about over a two-month period, the appellant sent some 45 letters. He sent the letters. What are the facts that were found that it was necessary to respond to those letters by entering this prior restraint? Well, Your Honor, as you indicated, this amounts essentially to an extortion against the bank. I asked that question. Now I'll ask you, why do you think it rises to that level? You think this is criminal, chargeable? Should there be a referral to the prosecutors? I can't say. That would be an answer for the prosecutors themselves, but what I can say is the letters speak for themselves. And without quoting the letters, the letters essentially directed to the president and CEO of the bank's shares. What in the magistrate judge's report and recommendation or district court's order found that those letters necessitated a response of a restraint against Mr. Ryu continuing to send these? Your Honor, the magistrate judge's order was very thoughtful and careful. And the first thing that the magistrate pointed out was the nature of the appellant's misconduct. He detailed exactly what the appellant did, what those letters contained, the fact that it was an attempt to coerce a settlement with the bank. Excuse me, where? I'm looking at the initial and then the later magistrate judge's report. What do you say in here amounts to a finding that this is coercion? And tell me which order you're referring to. The first order is JA 069 to 071. The second one is JA 217 through 227. And hit the date for us, too. I'm looking at the November 20, 2017 order, but you may be looking at something else. Magistrate Judge Dixon, in his letter order, stated, in defendant used letters to plaintiffs, board of directors, and employees. Defendant is threatening to contact the shareholders on a weekly basis in order to influence the plaintiffs to settle cases. We've got to hold up because we're trying to get you to get us on the same page as you. What are you reading from? What page are you reading from? It's the November 20, 2017 letter order, I believe it's JA 222. What page? Page JA 222. And the regular page, like the page of the letter? Page six. Okay, go ahead. In that order, the magistrate judge, I'll start again. In defendant used letters to plaintiffs, board of directors, and employees, defendant is threatening to contact the shareholders on a weekly basis in order to influence the plaintiffs to settle the case. Communicating with the shareholders on a weekly basis in order to influence settlement with the parties is a clear attempt to obtain a strategic advantage. There is no place for this tactic under the federal rules of civil procedure. So we don't have any findings here about anything that amounts to blackmail or anything like that. We find an effort to obtain a strategic advantage. I don't see anything that says the trial will be prejudiced. I don't see anything about witnesses being prejudiced. He's saying it's a tactic. That doesn't go nearly as far as the assertions that you're making. Your Honor, I don't have the specific part of the order in front of me. I have it right in front of me, and I see the strategic advantage, and then the judge is offended even though there's not a particular rule that it violates, and he finds it's commercial and he doesn't like a strategic advantage. I don't see blackmail. So I think you may be overstating what supports this order. Well, Your Honor, the magistrate judge explained in detail the nature of the communication or the contents of the letters. He then went on to emphasize the importance of the district court in regulating the conduct of the parties. Okay. Are there any other factual findings apart from that in the magistrates or the district court's order that you are relying on to ground this, apart from he's trying to obtain a strategic advantage by making these threats to the shareholders? With respect to the factual findings, I would submit that both the magistrate judge and the district court focused on the letters themselves and really the overall letter campaign scheme that was perpetrated by this appellant. You say the letters themselves. At this point, it's clear that the only thing in front of us is letters to shareholders, right? They've disclaimed any interest in further contact, Mr. Ryu, writing to your clients, corporate representatives, right? We're only talking about letters to shareholders, right? That's actually not in your briefing. It's not just in his statement, but in your answering brief at 25, you say they're only appealing the order insofar as it restricts communications with Bank of Hope shareholders. Yes, Your Honor. The appellant has indicated in their submission that they are limiting the issue on this appeal to his letters to the institutional shareholders. Right. But I submit to you that what the magistrate judge decided was about this entire letter campaign. Precisely. Exactly. So why isn't that all by itself something that's different enough that the party should be back in front of the magistrate judge? Look, I hear Mr. Harvey saying, well, we want to keep writing to the shareholders, and you saying, well, we don't want them to write to the shareholders. But maybe the magistrate judge, having looked before at a whole letter writing campaign, as you put it, but now looking at something different, that is an effort to contact shareholders and not other people, not the bank, not its officers, not its directors, might say, well, this is different. And we absolutely agree with you, Your Honor. And that is exactly why the magistrate judge issued his order pending further order from the court. He left open the possibility, the probability that this appellant would come back to him and seek some type of parameters as to what type of communication he could engage in that would be permissible. What we're reviewing is the district court's order, and the district court didn't have any qualifying language like that in it. But I would submit, Your Honor, that the underlying order that we are reviewing is the magistrate judge's order. That's the operative order. And that order specifically states that it's being issued pending further order from the court. I don't know if you want to move to the next one. I want to move on to something a little different, which is if we apply prior restraint doctrine, you have to show this is the least restrictive means to further a compelling interest. Even if we apply commercial speech, intermediate scrutiny, you have to show some kind of tailoring in light of alternatives. I don't see anything in the magistrate judge or district court's opinions that reflect grappling with alternatives to completely shutting down the discussion. So name an alternative. Was there any consideration of alternatives here? I mean, you know, there are ways to insulate jurors, insulate witnesses, you know, protect, prevent certain kinds of unlawful threats. The courts below didn't consider any of that, did it? No, they did not, Your Honor. Well, then doesn't that automatically require reversal if they didn't consider alternatives? No, Your Honor. As we indicate, it's intermediate scrutiny, right? Well, I guess your best case, right? Your best case is intermediate scrutiny.  And that substantial interest has to be directly advanced and no more extensive than necessary to serve that interest. That's the test, isn't it? Yes, it is. And I believe... Is there anywhere where the magistrate judge articulates that test, applies that test, that justifies what was imposed by way of restriction based on that test? Well, we would submit that the order does comply with those requirements in that, first of all, what he recorded was direct communication... You have to at least acknowledge this, Mr. Yee, right, that he doesn't... The magistrate judge doesn't purport to apply... He doesn't, in any language, say, hey, this is the test I'm applying and this is how it's coming out. I agree, Your Honor. He did not. But, again, I believe that this was a thoughtful, careful decision based on the specific facts before him, i.e. the letters and the contents of the letters and this letter campaign scheme. I understand you want us to focus on this case, but we have to worry about what happens three cases down the road. On your theory, what kind of speech would not be commercial? Let me give you a hypo. Let's imagine Mr. Ryu writes a book about his experience in this litigation. He complains about how he's being treated, about the abuses of big corporate America. He sends a signed copy of the book to each institutional shareholder. Could that be barred? Would that be commercial speech and, therefore, subject to intermediate scrutiny, and would it survive that? Well, first of all, I think we would have to look at the timing of that publication of that book. Let's say it's during the litigation, before the litigation is settled. Well, if it's during the litigation, then certainly the court has, the district court has the inherent power to regulate the conduct of the parties, including speech and communications, extrajudicial communications, and so the court would have the right to look at contents of that book. Do you think it could ban him from publishing the book? I don't believe so, Your Honor. Why not? Because there are many methods of communication that the appellant could have engaged in. He could have gone to social media to explain his, to air his grievances, to say that he was being falsely accused by the bank and that he's being sued by the bank. You'd be right back here. You'd be saying he's trying to bring pressure to bear on the shareholders. The shareholders are Facebook friends. They're getting his Twitter feed. He's making a bigger deal out of it, broadcasting it publicly, rather than just sending these private letters here. You would be making the same argument if he went to social media to do this. No, Your Honor. If he were to go to the press, now, if you look at the magistrate judge's order, it's limited. It doesn't apply to members of the press. This appellant threatened to go to the members of the press with this letter, which contained false and misleading information, which contained internal confidential bank documents, which, by the way, he released in violation. That's not in front of us, right? He's conceded that point. That's out. So you should stick with the hypothetical that's put to you. And I take it that you've said the court couldn't ban the publication of the book, right? Couldn't ban it. Could it ban the book then being sent to each shareholder with a note saying, hey, read this part that says what dirtbags the people at Bank of Hope are? Your Honor, I think it would depend on the contents of the book and whether Bank of Hope decided to challenge any contents of that book. It can't depend on whether you decide to challenge it or not, right? I mean, the fact that you don't like it or you think it's wrong doesn't deal with the question of whether this is commercial speech or whether this is mixed speech. Your reaction or response, is that relevant? I don't think the court can prevent him from publishing the book, but I think that the court would have the authority to regulate the conduct and examine the contents of the book to determine whether there is a substantial likelihood of material prejudice to the legal proceedings based on the appellant's conduct. My colleagues may have other questions for you. If not, I think we've got your position. Thanks very much, Mr. Yee. Thank you. Mr. Harvey, your rebuttal. Thank you, Your Honors. Just briefly, on the point about going back to the magistrate judge, I had indicated that I didn't think that without the support of the bank, in support of a request to release the orders, that the magistrate judge would be likely to do that. But there's a more fundamental question here, which is timing. Judge Dixon first imposed the restriction on Rue's speech on May the 4th of 2017. That was over two years ago. And then asked Rue to not speak at all until further order of the court. And then we got a further order of the court. That was November, the third or fourth week in November of 2017. And so it's been a considerable amount of time now. And I would be happy to go back to the magistrate judge and have this order lifted. My client's First Amendment rights would be free to exercise them. I just don't know that actually that's what's going to happen here. And we got all the way to this point, and it's, as I said, a considerable amount of time. That's understood. But, you know, I put it to you that you never get an answer if you don't ask. So, you know, a lot of ink might have been spared. But we are where we are. We understand that. But it's not like that doesn't actually have some potential impact on the jurisdictional inquiry that's in front of us, right? Because one of the jurisdictional pieces that we've got to deal with here is are we dealing with a final order? You've heard your opponent say it's not final. They can go back at any time. And that's something we're going to have to wrestle with. You can always move before you consider a court's order, but you get a dirty look at some point. You've never gone back. At some point, it seems like perhaps something further down the road. But go ahead. Well, we did object to the district court, too. So it's not like we didn't go through a very serious process. And along those lines, I would like to, and I think it's worth noting that we made a record, I made a record, that this was not part of the law firm litigation program was to start these communications. This was a client decision. As I told the magistrate judge, I neither encouraged it nor discouraged it. In my view, it's not my job to tell clients what they can't say when they really want to say it. It's their business. And so when we look at it from- They say, you vetted the letters, you reviewed the letters, you're, you know. Now, I'm not sure that that's here or there as a legal matter, but their assertion seems to be this is fully counseled behavior. Not true. I made that record before the district court and the trial, and before the magistrate judge, is that I did not, that's not the case. I had told the client that I wasn't going to, this was his program. I was neither going to, my exact words, neither were they going to encourage nor discourage him, because I don't see it as my job for exactly the reason I just stated. And yet I didn't see that it had any benefit to what I'm hired to do as a lawyer. It's not part of the program, typically. It just didn't seem to make any sense to me. And that brings us to a fundamental point, which is how we view this case. Do we look at it from the bank's side? Does the court look at it from the bank's side and say, well, the bank's being kind of treated unfairly here. Does it look at it from Rue's side and say, well, Rue has got a good point here. None of these allegations against him have been proved. It's a pretty serious matter. He's raised some very good points about the effect on his family and such, and the answer is that the court shouldn't do either. This is an unproven allegation. He's complaining about an unproven allegation, which is still unproven. They dropped the case. And I might note that on March the 22nd, in a filing with the district court, they noted that they believe the claim still has merit. So the controversy between the bank and Mr. Rue about whether this claim is true or not goes on. And the court has no way to tell. There's no way this court can tell who's right or who's wrong on that, which is why courts traditionally stay out and don't enjoin defamation. And it really brings us right back to the common law of seditious libel, which is that's exactly when courts were back in the business of that at one time early in our history. I take the position of the bank not to be we want you to enjoin some defamation in advance. Their whole pitch is, and I assume that the magistrate judge's thinking process, based on what we read, is that you are abusing the processes that are supposed to orderly decide who's right and wrong. That by bringing economic pressure to bear and threatening the market value of the bank, you're not seeking a fair adjudication of the dispute. You're seeking to unfairly affect the adjudication of the dispute. And that even if you don't call this a sanction, this is in the nature of the court trying to control the behavior of litigants so that there can be a fair process. I probably didn't do justice, but I take that to be their pitch. And the reason that pitch fails is because it's the marketplace for ideas in which he pitched his ideas. He didn't pitch it in the court system. He pitched it to a non-party in the marketplace of ideas, and the court had no business to regulate that. Is there any circumstance under which a magistrate judge could look at the behavior of a litigant in communicating with a non-party, but nevertheless a party who can control or influence a party? Or is that the position you've got that just if you're out in the marketplace of ideas and you could say whatever you want to say in an effort to bring pressure to bear on a party to do something different rather than pursue a legal remedy? Well, I suppose I can imagine a scenario where a party threatens a contract or a supplier of a company and threatens that supplier and tells the company, I'm going to go to your supplier and I'm going to get that supplier to cut you off, and that's going to inflict the greatest harm. And I'm not sure in that circumstance whether the court would have the power under the prior restraint doctrine to adjudicate that claim in advance, and we are far, far factually away from that hypothetical scenario. Okay. Well, thank you very much, counsel. We've got the matter under advisement. We understand there's a desire to have this resolved, and we'll get back to you promptly. Recess court. This court is adjourned until Wednesday, June 5th at 10 a.m. Thank you.